[Civ. No. 48354. First Dist., Div. Two. Aug. 31, 1982.]

LOCKHEED MISSILES AND SPACE COMPANY et al., Plaintiffs and Appellants, v.
GILMORE INDUSTRIES, INC., Defendant and Respondent.

COUNSEL

James J. Duryea and Richard L. Antognini for Plaintiffs and Appellants.

Stephan A. Barber and Popelka, Allard, McCowan & Jones for Defendant and Respondent.

OPINION

MILLER, J.—Lockheed Missiles and Space Company (hereinafter Lockheed) and Harbor Insurance Company appeal from a judgment in favor of Gilmore Industries, Inc., aka M.B. Electronics Division (hereinafter M.B.) following the granting of M.B.'s motion for summary judgment.

The facts of the case are undisputed. In 1965 Lockheed purchased a shaker-amplifier system from M.B. The system began to malfunction in August 1970 and on August 24, 1970, Lockheed sent M.B. a written purchase order to make repairs.

Section one of the purchase order prepared by Lockheed provides in pertinent part: "ACCEPTANCE. This order becomes the exclusive agreement between the parties for the supplies, subject to the terms and conditions hereof, when accepted by acknowledgement or commencement of performance."

Section nine of the purchase order is an indemnity clause. It states: "In the event Seller, its employees, agents, subcontractors and/or lower-tier subcontractors enter premises occupied by or under the control of Buyer in the performance of this order, Seller shall indemnify and hold harmless Buyer, its officers and employees from any loss, cost, damage, expense or liability by reason of property damage or personal injury of whatsoever nature or kind arising out of, as a result of, or in connection with such performance occasioned in whole or in part by the actions or omissions of Seller, its employees, agents, subcontractors and/or lower-tier subcontractors."

On August 31, 1970, M.B. sent a service representative, Donald Wichman, to the Lockheed plant. He performed tests on the shaker-amplifier system on August 31 and September 1. On September 1, 1970, while testing the system, Wichman was electrocuted.

Wichman's heirs sued Lockheed and that suit was settled in February 1976 for $115,000. Lockheed brought this suit to recover this amount, its fees and costs from M.B.

Summary judgment was granted in favor of M.B. by the lower court on the basis that no representative of M.B. had signed the purchase order prior to Wichman's death and, pursuant to section 3864 of the Labor Code,[1] M.B. had no duty to indemnify Lockheed.

Section 3864 reads as follows: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against a third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury." The sole issue on appeal is the meaning of the term "executed" as used in this section.

■ Appellants contend that by commencing the performance called for in the purchase order, M.B. had entered into a binding contract with Lockheed before Wichman was electrocuted. They maintain that the contract, by becoming binding, was an executed indemnity agreement under section 3864. We disagree with this reasoning.

---

[1] All code sections will refer to the Labor Code unless otherwise indicated.

In *Solano Concrete Co. v. Lund Constr. Co.* (1976) 64 Cal.App.3d 572 [134 Cal.Rptr. 552], a subcontract was prepared, but not signed, between Solano as general contractor and Lund as subcontractor. Lund was to furnish all labor and materials to construct the sewers and water system for a subdivision. Lund was also to indemnify and hold Solano harmless from any and all liability, claims, and damages caused or claimed to be caused by the independent or concurrent negligence of Solano and Lund. Work commenced on the subdivision even though the subcontract had not been signed. Solano dug the trenches that would eventually contain the sewer and water lines. Thereafter, an employee of Lund descended into one of the trenches and was killed when its walls collapsed. Approximately two years after the employee's death Solano and Lund signed the subcontract. A wrongful death action was filed against Solano and Solano filed a cross-complaint against Lund alleging in the first cause of action that by the terms of the unsigned subcontract, Solano was entitled to a defense and indemnification with regard to the wrongful death action.

Applying Black's Law Dictionary's definition of the term "execute,"[2] the appellate court ruled that as applied to the facts of the case, section 3864 was too clear to be subjected to interpretation: "[t]he written agreement was not *executed* prior to the accident." (*Id.*, at p. 575, italics in original.) *Solano* stands for the proposition that an indemnity agreement must be in writing and signed by the parties. A different conclusion would end in an illogical result.

The term "executed" is defined inter alia as "completed; carried into full effect; already done or performed.... The opposite of executory." (Black's Law Dict. (rev. 4th ed. 1968) p. 676.) Accordingly it is well settled that in order to be "executed" an agreement must be fully performed on both sides. (Civ. Code, § 1661; *Walther v. Occidental Life Ins. Co.* (1940) 40 Cal.App.2d 160, 166 [104 P.2d 551], *Klein Norton Co. v. Cohen* (1930) 107 Cal.App. 325, 330 [290 P. 613].) While, as appellant suggests, an offer may be accepted by the commencement of performance, this does not mean there is an "executed" agreement.

In the present case the record is silent as to whether the purchase agreement had been performed on both sides. Wichman was electrocut-

---

[2]The *Solano* court adopted only a portion of Black's definition. The opinion stated: "To execute means, inter alia, 'to make; as to execute a deed, which includes signing, sealing, and delivery; performance of all necessary formalities.'" (*Solano Concrete Co. v. Lund Constr. Co.* (1976) 64 Cal.App.3d 572, 575, fn. 2 [134 Cal.Rptr. 552].)

ed while in the process of repairing the shaker-amplifier system. Thus, it is unlikely that repairs had been completed or that M.B. had been compensated for performing such repairs prior to Wichman's death. Accordingly, it is extremely doubtful that the purchase agreement had been performed on both sides.

Even if the purchase agreement had been fully "executed," we do not believe that this was the type of executed agreement intended by section 3864. If we were to adopt appellants' position it would result in the rule that any written contract containing an indemnity provision would be fully enforceable upon completion of performance by both parties regardless of whether the proposed indemnifying party had signed, read or even received the written contract. This could not have been the intent of the statute.

The judgment is affirmed.

Grodin, P. J., and Rouse, J., concurred.