[No. A033411. First Dist., Div. Two. Mar. 30, 1987.]

RAE HESS et al., Plaintiffs and Appellants, v.
TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY,
Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication, with the exception of parts I, II, III, V, VI, and VII.

COUNSEL

Robert C. Chiles, Donald M. Lewis III and Hall, Henry, Oliver & McReavy for Plaintiffs and Appellants.

Guy O. Kornblum, William B. Boone, Donna P. Clay-Conti, Glen R. Olson and Kornblum, Kelly & Herlihy for Defendant and Respondent.

**OPINION**

**ROUSE, J.**—Plaintiffs Rae Hess and the company of which she is the sole shareholder, chief executive officer and chairperson of the board, appeal from a judgment entered in favor of defendant insurer on a complaint seeking reformation of an insurance contract and damages for breach of contract and bad faith.

Plaintiffs filed a complaint on September 3, 1982, alleging that, in 1971, she had sought a $100,000 life insurance policy from defendant's predecessor, Occidental Life Insurance Company (Occidental). According to the complaint, the policy was "key person" insurance required by the Small Business Administration as a condition for that agency's approval of a loan to plaintiff Hess's financially troubled chemical company. After its own doctor examined Mrs. Hess and discovered that she had higher than normal blood pressure, Occidental agreed to issue the policy only on condition that plaintiffs pay a premium surcharge of $1,000 per quarter. In 1978, at plaintiffs' urging, Occidental reviewed Mrs. Hess's medical condition and rerated her, dropping the $1,000 per quarter premium surcharge.

By their complaint plaintiffs sought reformation of the insurance contract and return of approximately $60,000 which they contended was improperly collected by the insurer in premium surcharges. They also alleged that, by its discriminatory rating of Mrs. Hess as a substandard insurance risk, the insurer had breached its duty under the contract to deal with plaintiffs in good faith.

An amended complaint naming Occidental's successor, Transamerica Occidental Life Insurance Company (Transamerica), was filed December 30, 1982. The insurer successfully demurred to the reformation cause of action in the amended complaint, and plaintiffs were given leave to amend. A second amended complaint was filed March 14, 1983. Once again the insurer brought a demurrer and at the hearing on the demurrer the court permitted plaintiffs to submit what was in substance a proposed version for a third amended complaint. On May 16, 1983, the demurrer as to the first cause of action in the second amended complaint was sustained without leave to amend. Plaintiffs unsuccessfully sought an extraordinary writ to set aside that order.

The insurer then moved for judgment on the pleadings with respect to the second cause of action—that for bad faith. Apparently, the motion was granted with leave to amend. On January 19, 1984, plaintiffs filed an

amended version of the second cause of action. The insurer's demurrer to the amended bad faith claim was overruled. It then sought summary judgment which was granted October 22, 1985. Judgment was entered in favor of defendant; plaintiffs make a timely appeal.

Plaintiffs contend that the judgment should be reversed on two grounds: (1) that it was error to sustain a demurrer without leave to amend as to their first cause of action, and (2) that it was error for the trial court to grant summary judgment as to their second cause of action.

I.-III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV.

█ In their amendment to the second cause of action plaintiffs alleged that the insurer breached the implied covenant of good faith and fair dealing. They alleged, on information and belief, that "Occidental knew that Mrs. Hess was not suffering from a condition which affected her longevity or should have known that she was not suffering from such a condition due to its substantial experience and knowledge of such matters." To the extent that this allegation deals with the insurer's conduct at the time it first examined Mrs. Hess in order to rate her as an insurance risk, plaintiffs are seeking to argue that the insurer had a duty of good faith and fair dealing during the period prior to the inception of the contract. Thus, plaintiffs allege, in substance, that by failing to adequately investigate the nature of Mrs. Hess' blood pressure condition, the insurer breached its duty to act in good faith toward her. This allegation raises the novel question of law of whether the implied covenant of good faith and fair dealing arises prior to the formation of a contractual relationship.

█ Breach of the covenant of good faith and fair dealing which is implied by law in all contracts (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883]) may give rise to a cause of action sounding in tort. (E.g., *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [157 Cal.Rptr. 482, 598 P.2d 452]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429-430, 432 [58 Cal.Rptr. 13, 426 P.2d 173].) "The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 818.)

---

*See footnote, *ante,* page 941.

Although the duty of good faith and fair dealing arises from the contractual relationship, it is a duty imposed by law. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-575 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 48-49 [147 Cal.Rptr. 565].)

Plaintiffs alleged that "Defendant breached its duty of good faith and fair dealing by continuing to deny the plaintiffs the fruit of their contract, by refusing to correct an unlawful and discriminatory charge, which existed from the initiation of the policy of insurance and which Defendants had assessed without justification and in violation of Insurance Code Section 790.03." The second cause of action also alleges that defendant "had a duty under the California Code of Insurance not to make or permit any unfair discrimination between individuals of the same class in equal expectation of life in the rates charged . . . ."

These allegations plead both a bad faith claim and a violation of Insurance Code section 790.03, subdivision (f).[1] Thus, plaintiffs are alleging that, because the section prohibits insurers from permitting "unfair discrimination" in rates, defendant's failure to adequately evaluate the health of an applicant (if health is the basis for a discriminatory premium) constitutes a breach of the insurer's covenant of good faith and fair dealing.

The difficulty with this argument is that plaintiffs are unable to present us with authority for the proposition that the covenant arises *prior* to the existence of a contractual relationship between the contracting parties. Indeed, there is authority for precisely the opposite rule, namely, that "an insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract." (*Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 448 [208 Cal.Rptr. 511].)

We conclude that precontract conduct in evaluating the health of an applicant for insurance is not conduct which will support a cause of action for bad faith. Such conduct may be actionable under theories of fraud or fraudulent inducement. (See *Murphy* v. *Allstate Ins. Co., supra,* 83 Cal.App.3d 38, 46-47; *Miller* v. *National American Life Ins. Co.* [1976] 54 Cal.App.3d 331, 338 [126 Cal.Rptr. 731].) However, these plaintiffs specifically disavowed such a theory. Accordingly, we find that the trial court did

---

[1]Section 790.03 provides, in pertinent part, that "The following are hereby defined as . . . unfair and deceptive acts or practices in the business of insurance: [¶] . . . (f) Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance . . . ."

not err in finding as a matter of law that there was no triable issue of material fact as to the insurer's precontract conduct.

## V.-VII.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

---

*See footnote, *ante,* page 941.