[No. D017383. Fourth Dist., Div. One. Sept. 7, 1993.]

NIELSEN CONSTRUCTION COMPANY, Cross-complainant and
Appellant, v.
INTERNATIONAL IRON PRODUCTS, Cross-defendant and Respondent.

COUNSEL

McCormick & Mitchell, John P. McCormick and Roberta F. Lowe for Cross-complainant and Appellant.

Campbell, Rubino, Torres & Wolfenzon and Bruno Wolfenzon for Cross-defendant and Respondent.

OPINION

**KREMER, P. J.**—Nielsen Construction Company (Nielsen), a general contractor on a construction project, appeals a judgment of dismissal following the sustaining of a demurrer on its action claiming a subcontractor, International Iron Products (International), was contractually obligated to defend and to indemnify Nielsen from damages and injuries suffered by an International employee on the construction site. Nielsen contends the trial court erred in finding the contract containing the indemnity provision was not timely executed under Labor Code[1] section 3864. We affirm.

FACTS

In November 1990, Nielsen and subcontractor International entered into an agreement where International agreed to "assume the defense of and indemnify and save harmless" Nielsen "from all claims, loss, damage, injury, . . . including injury . . . of Subcontractor's employees directly or

---

[1]All statutory references are to the Labor Code unless otherwise specified.

indirectly arising from the performance of this agreement or arising out of the failure of Subcontractor . . . to provide a 'Safe Place to Work' and from any and all claims, loss, damage, injury, death and liability however caused or incurred including injury to . . . Subcontractor's employees, resulting directly or indirectly from the nature of the work covered by this agreement." The agreement provided International's "duties to defend, indemnify and save harmless shall apply to liability incurred or claimed as a result of negligence, regardless of responsibility for such negligence" unless Nielsen was solely negligent.

International signed the agreement on November 2, 1990.

On November 5, 1990, an International employee was injured when he fell four to six feet down an unlighted elevator shaft which had no guarding barricades or warning signs.

On November 20, 1990, Nielsen signed the International subcontract agreement.

About a year later, in November 1991, the injured employee sued Nielsen on a premises liability theory, claiming Nielsen failed to provide a safe work place and violated Occupational Safety and Health Act regulations by failing to supervise subcontractors to maintain a safe premises, to erect barricades or supervise subcontractors in erecting barriers around the open elevator shaft and failed to warn subcontractors, employees and other persons there were holes in the floor without proper barricades.

Nielsen cross-complained against International seeking declaratory relief and to require International to defend and indemnify it pursuant to the provision in the Nielsen/International agreement. International demurred, asserting it was not required to indemnify Nielsen because section 3864 permits an indemnity action against an injured worker's employer only when there was a written indemnity agreement executed before the injury and here the Nielsen/International agreement was not fully executed until November 20, 1990, about two weeks after the injury.

The trial court sustained International's demurrer without leave to amend and dismissed Nielsen's cross-complaint against International.

### Discussion

Nielsen contends the court erred in interpreting section 3864 and concluding International was not required to defend or indemnify Nielsen

because the parties had not executed an indemnity agreement before the injury occurred.

There are a few cases addressing the term "executed" in section 3864. In *Solano Concrete Co.* v. *Lund Constr. Co.* (1976) 64 Cal.App.3d 572 [134 Cal.Rptr. 552], the court held an indemnity provision was not executed before the injury when it had been prepared before the injury but was not signed until nearly two years after the injury occurred. The *Solano* court, pointing to a Black's Law Dictionary definition of "execute"—" 'to make; as to execute a deed, which includes signing, sealing, and delivery; performance of all necessary formalities.' (Black's Law Dict. (Rev. 4th ed.) p. 676.)"—held, as applied to the facts of its case, "section 3864 is too clear to be subjected to interpretation." (*Solano Concrete Co.* v. *Lund Constr. Co.*, *supra*, 64 Cal.App.3d at p. 575, fn. 2.) In *Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc.* (1982) 135 Cal.App.3d 556 [185 Cal.Rptr. 409] and *City of Oakland* v. *Delcon Associates* (1985) 168 Cal.App.3d 1126 [214 Cal.Rptr. 734], the courts held an indemnity provision was not enforceable under section 3864 when only the third party (indemnitee) had signed the agreement prior to the injury.

In *Lockheed*, the court noted the dictionary definition of " 'executed' " included the meaning of " 'completed; carried into full effect; already done or performed' " and being " '[t]he opposite of executory' " and concluded "it is well settled that in order to be 'executed' an agreement must be fully performed on both sides. [Citations.]" (*Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc.*, *supra*, 135 Cal.App.3d 556, 559, quoting from Black's Law Dict. (rev. 4th ed. 1968) p. 676.) The *Lockheed* court rejected the appellant's argument that "the commencement of performance [means] there is an 'executed' agreement." (135 Cal.App.3d at p. 559.)

The court also rejected an argument that full performance of the contract by both parties should be construed as fulfilling section 3864's requirement of an "executed" agreement: "Even if the purchase agreement had been fully 'executed' [i.e., fully performed by both parties], we do not believe that this was the type of executed agreement intended by section 3864. If we were to adopt appellants' position it would result in the rule that any written contract containing an indemnity provision would be fully enforceable upon completion of performance by both parties regardless of whether the proposed indemnifying party had signed, read or even received the written contract. This could not have been the intent of the statute." (*Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc.*, *supra*, 135 Cal.App.3d 556, 560.)

The *Delcon* court followed the reasoning of the *Lockheed* case. In *Delcon*, the court also responded to an argument the employer/indemnitor should be

bound to the agreement even though it had not signed the agreement before the injury because the employer/indemnitor's representative had read and understood the agreement, including the indemnity provision, before it accepted the agreement and began performance. In rejecting the argument, the *Delcon* court stated: "While it may seem unfair that respondent can avoid obligations which its representative read and understood, section 3864's requirement that an indemnity provision be 'executed' before it can be considered binding is clear and unequivocal. [Citation.] *It is not unreasonable for the Legislature to impose the relatively light burden of obtaining an executed indemnity agreement on the party who will benefit from it.* That burden is set forth in clear and simple language and should be easily understood; *if a third party intends to bind an employer to an indemnification agreement, it must obtain the employer's signature prior to the injury.* By tampering with the statutory language, we would be opening a Pandora's box of exceptions which would serve only to create confusion and needless litigation. Accordingly, *because the written purchase order was never executed by respondent,* we conclude it was not bound by the indemnity clause." (*City of Oakland* v. *Delcon Associates, supra,* 168 Cal.App.3d 1126, 1130-1131, fn. omitted, italics added.)

Nielsen, relying on the emphasized language in *Delcon,* argues section 3864 only requires the person to be charged (i.e., the employer/indemnor) to sign the indemnity agreement before the employee was injured. We disagree.

First, the language in *Delcon* was dicta; the *Delcon* court was not presented with the situation where the employer/indemnitor had signed the agreement before the injury occurred. *Delcon* involved a different situation, i.e., one where the employer/indemnitor had not signed the indemnity agreement before the injury occurred. Second, the *Delcon* court's statements must be viewed in context, i.e., responding to an argument the employer should be held bound by the indemnity provision because evidence indicated its representative had read and understood the provision. Viewed in context, the court's statements are merely an amplification of its conclusion the Legislature intended to require the employer/indemnitor to sign the indemnity agreement before the date of injury. The *Delcon* court was neither addressing nor deciding the issue presented here, i.e., whether a written indemnity agreement is executed under section 3864 when the third party/indemnitee fails to sign the agreement until after the injury occurs.

Nielsen contends an interpretation requiring both parties to sign the agreement is improper. He argues his interpretation of section 3864 as requiring only the employer's signature before the date of injury reflects

"general contract principles." Nielsen's "general contract principles" derive from other statutes. He cites the following statutes as supporting his contention the indemnity agreement is enforceable against International:

"[Statute of Frauds] [¶] The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and *subscribed by the party to be charged or by the party's agent* . . . ." (Civ. Code, § 1624, italics added.)

"[Enforcement of Contract Signed By One Party Only; Specific Performance.] [¶] *A party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed* it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance." (Civ. Code, § 3388, italics added.)

"[Formal Requirements; Statute of Frauds] [¶] (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought or by his or her authorized agent* or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in the writing." (Cal. U. Com. Code, § 2201, italics added.)

While these statutes support Nielsen's position that there are general contract rules requiring only the party to be bound to sign the agreement, these statutes do not support Nielsen's position that section 3864, in particular, requires only the party to be bound to sign the written indemnity agreement; indeed, these statutes support a contrary conclusion.

Nelson's cited statutes demonstrate that, had the Legislature intended to require only the signature of the employer/indemnitor prior to the injury in section 3864, they easily could have so provided as they have done so in the statutes cited by Nielsen as well as many other statutes. (See, e.g., Civ. Code, §§ 1135 [bills of sales for ships], 1524 [accord and satisfaction]; 1698 [modifying written contracts]; 2309 [agent's authority]; 2793 [suretyship]; Code Civ. Proc., §§ 360 [acknowledging promise renewing liability]; 1974 [statute of frauds as to representing credit of a third party]; Cal. U. Com. Code, § 9203 [formal requisites for attaching and enforcing a security interest].) The Legislature did not, however, choose to include such language limiting execution (i.e., signing) of the agreement to only the employer/

indemnitor. Instead, the Legislature required "a written agreement so to [indemnify] executed prior to the injury." (§ 3864.)

As indicated by the cases interpreting section 3864, the Legislature did not intend the term "executed" to be used in the sense of completing performance of the contract obligations but instead intended the term to be used in the sense of completing, i.e., signing, the written agreement. Among the Black's Law Dictionary definitions of "execute" is "to sign . . . . *To perform all necessary formalities, as to make and sign a contract . . . .*" (Black's Law Dict. (5th ed. 1979) p. 509, italics added.) The definition of "executed" also includes the meaning of "signed," "completed" and "imports idea that nothing remains to be done." (*Ibid.*) ▇ In other words, a written agreement is "executed" when all parties sign the agreement; only then is the written agreement completed and all necessary formalities performed.

▇ We conclude Nielsen has misread section 3864 as requiring only the employer/indemnitor to execute before the injury. The language of section 3864 clearly requires execution of the written agreement (i.e., signatures of all parties) before the injury.

We conclude the written indemnity agreement was not timely executed pursuant to section 3864 because the written agreement was not signed by both parties before the injury occurred. The trial court properly sustained International's demurrer without leave to amend and entered judgment against Nielsen.

## DISPOSITION

The judgment is affirmed.

Benke, J., and Nares, J., concurred.