**Itzhak KOTEV, Plaintiff,**

v.

**FIRST COLONY LIFE INSURANCE COMPANY, Defendant.**

**No. CV 96–2044.**

United States District Court,
C.D. California.

May 30, 1996.

Frank Gooch III (argued), Sean T. Prosser, Gilchrist & Rutter Professional Corporation, Santa Monica, CA, for defendant.

Paul Freud Wotman, Gary R. Cloutier (argued), Law Offices of Paul Wotman, San Francisco, CA, for plaintiff.

## ORDER AND OPINION

REA, District Judge.

First Colony Life Insurance Company's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) came on regularly for hearing before the Court on April 15, 1996. Having reviewed the papers submitted in support of and in opposition to the foregoing motion, the file in this case, and the

applicable authorities, the Court rules as follows.

The motion to dismiss is GRANTED WITHOUT PREJUDICE as to Kotev's seventh cause of action for intentional infliction of emotional distress and eighth cause of action for negligent infliction of emotional distress. The motion to dismiss is DENIED as to the remaining causes of action.

## BACKGROUND

Plaintiff Itzhak Kotev alleges that defendant First Colony Life Insurance Company ("First Colony") denied his 1995 application for life insurance solely for discriminatory reasons.

Kotev first applied to First Colony for a life insurance policy in 1991. Because Kotev's wife is infected with HIV, First Colony required that Kotev take an HIV test. Although Kotev's test results were negative, First Colony denied his application for life insurance, stating that his wife's HIV-positive status placed Kotev in a high-risk category.

Kotev applied to First Colony for life insurance again in 1995. Again, he was required to take an HIV test, and the results were negative. First Colony denied his application for a second time. The rejection letter from First Colony stated: "As you know, you and your spouse applied to us for insurance in 1991. On February 11, 1991, we notified you and your spouse that your application was declined due to your spouse's laboratory test results showing abnormalities of potential significance to your health." Complaint ¶ 11.

Kotev alleges that the denial of life insurance was based solely and improperly on the fact that he is married to a woman who is HIV positive. He claims that First Colony summarily rejected his 1995 application rather than assess the risk that Kotev would become infected with HIV. On February 1, 1996, Kotev filed a complaint in state court bringing the following causes of action: (1) violation of the Unruh Civil Rights Act, California Civil Code § 51; (2) negligence; (3) violation of Title III of the Americans with Disabilities Act; (4) violation of the California Insurance Code § 799; (5) violation of the California Insurance Code § 799.02; (6) violation of the California Insurance Code § 799.05; (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress.

The complaint was served on First Colony on February 21, 1996. First Colony removed the complaint to federal court on March 22, 1996.

## DISCUSSION

### I. MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

#### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a federal court cannot dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir.1989). The allegations contained in the complaint must be construed in the light most favorable to the plaintiff, and all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—must be accepted as true. *Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

#### B. Plaintiff's Claims Are Not Barred by the Statutes of Limitations

First Colony argues that Kotev's claims are barred by the applicable statutes of limitations. A cause of action for the denial of insurance coverage accrues on the date of the denial. *Frazier v. Metropolitan Life Ins. Co.*, 169 Cal.App.3d 90, 103, 214 Cal.Rptr. 883 (1985). First Colony argues that Kotev's causes of action accrued at the time of the 1991 rejection. The complaint in this action was filed five years later, and the longest applicable statute of limitations is three years.

First Colony is correct that Kotev cannot recover for the 1991 denial. However, Kotev argues that his claims accrued upon the 1995 rejection, and that he is not

attempting to recover for the 1991 denial. Two elements are necessary for an act to restart the statute of limitations period: "(1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir.1987). Repetition of a wrongful act can be a new act supporting a new cause of action. *Schneider v. United Airlines, Inc.*, 208 Cal.App.3d 71, 76–77, 256 Cal.Rptr. 71 (1989) (republication of defamatory material creates an actionable claim even though a claim based on the original publication is time-barred).

Kotev argues that the 1995 denial is a new act by First Colony which created a new injury. The allegations of the complaint, viewed in the light most favorable to plaintiff, support Kotev's argument. The complaint states that upon his 1995 application for life insurance, First Colony again required Kotev to submit to an HIV test. Complaint ¶ 8. The fact that First Colony required Kotev to undergo an HIV test in 1995 supports his claim that the 1995 denial was a new and independent act, *i.e.*, that First Colony did not summarily deny the 1995 application based on solely on the 1991 denial. For this reason, Kotev's action is distinguishable from the following cases, cited by First Colony, in which a mere "reaffirmation of a previous act" was held not to restart the statute of limitations. In *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936 (9th Cir.1981), the Ninth Circuit held an action based on the defendant's subsequent refusals to sell china to the plaintiff to be barred by the statute of limitations because the defendant's initial refusal was "irrevocable, immutable, permanent and final." *Id.* at 938 (internal quotations omitted). The court found that the "reaffirmation[s] of the original decision not to deal with the plaintiff" were not actionable because "[the plaintiff]'s subsequent requests were forlorn inquiries by one all of whose reasonable hopes had been previously dashed." *Id.; see also Pace Indus.*, 813 F.2d at 238–39 (holding that the initiation of a lawsuit, rather than acts performed in prosecuting the lawsuit, was the "last overt act" which started the statute of limitations). By requiring Kotev to, *inter alia*, take an HIV

test again, First Colony's treatment of Kotev's second application was more than a mere reaffirmation of its previous denial. Viewing the allegations of the complaint in the light most favorable to plaintiff, the Court finds that the 1995 denial was a new and independent act.

Furthermore, the 1995 denial allegedly inflicted a new injury on Kotev. Contrary to First Colony's assertions, the fact that "[h]ere, there have only been two parties involved, Kotev and First Colony" is immaterial. *See Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir.1986) (separate antitrust violations by the same defendants against the same plaintiff create separate injuries and are therefore actionable); *cf. Schneider*, 208 Cal.App.3d at 77, 256 Cal. Rptr. 71 (each republication of defamatory material creates a new injury). When First Colony denied Kotev's application in 1995, First Colony knew that Kotev had twice tested negative for HIV and that Kotev's second negative test came after he had been married at least four years to a woman who is HIV positive. Kotev argues that First Colony's denial at a time it knew that Kotev would not necessarily become HIV positive renders the 1995 refusal even more "inexplicable and egregious," and consequently more injurious, than the 1991 denial. Opp. at 1318. Kotev has alleged facts which support his claim that the 1995 denial creates a new cause of action. Therefore, the Court finds that Kotev's complaint is timely.

 Kotev's complaint is based only on the 1995 denial; however, Kotev makes an argument which, if adopted by the Court, would bring the 1991 denial within the limitations period running from the 1995 refusal. Kotev argues that the continuing violation applies to the facts of this action. Under the continuing violation doctrine, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Watson v. Dept. of Rehab.*, 212 Cal.App.3d 1271, 1291, 261 Cal.Rptr. 204 (1989) (citing *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.1982)). Kotev argues that the two denials constitute a continuing practice of discrimination by First Colony.

The continuing violation doctrine, however, is inapplicable here. First Colony refused Kotev's applications on two distinct occasions, four years apart. As the Ninth Circuit stated in *Williams*, "[a] continuing violation should be distinguished from the continuing impact of a past, yet discrete and no longer existent discriminatory act." 665 F.2d at 925 n. 3. An example of a continuing violation is the discriminatory denial of a promotion; a discriminatory termination or refusal to hire is not a continuing violation. *See id.* at 924. The denials in this action are two discrete acts rather than one continuing violation. Because the continuing violation theory is inapplicable, Kotev is barred by the statute of limitations from recovery based on the 1991 denial.

## C. Kotev Has Stated a Claim Under the Unruh Civil Rights Act

■ Kotev claims that First Colony discriminated against him in violation of the Unruh Civil Rights Act, California Civil Code § 51. First Colony argues that Kotev cannot maintain this cause of action because the Unruh Act does not prohibit discrimination on the basis of marital status. *See Beaty v. Truck Ins. Exchange*, 6 Cal.App.4th 1455, 1462, 8 Cal.Rptr.2d 593 (1992) (holding that the denial of a joint insurance policy to an unmarried couple does not violate the Unruh Act). However, the discrimination alleged by Kotev is not based on his marital status; rather, it is based on his intimate and, presumably, sexual relationship with an HIV positive woman.

■ Discrimination on the basis of association with a person in a protected class ("sex, race, color religion, ancestry, national origin or disability") violates the Unruh Act. *Winchell v. English*, 62 Cal.App.3d 125, 129, 133 Cal.Rptr. 20 (1976) (discrimination on account of the race of plaintiff's associates is actionable); *see also In re Cox*, 3 Cal.3d 205, 216, 90 Cal.Rptr. 24, 474 P.2d 992 (1970) (the language and history of the Unruh Act "compel the conclusion that the Legislature intended to prohibit all arbitrary discrimination by business establishments"). Kotev has alleged that he was denied insurance based solely on his association with a person with a disability, and that the denial was

arbitrary. These allegations are sufficient to state a claim under the Unruh Act.

■ First Colony argues that "business establishments have 'a right under the Act to impose reasonable regulations rationally related to the services performed and the facilities provided'; likewise, an insurance company can impose reasonable limits on the risks that it wishes to insure against." Reply at 13, *quoting Cox*, 3 Cal.3d at 217 n. 13, 90 Cal.Rptr. 24, 474 P.2d 992. Whether or not First Colony will be able to show that it denied Kotev's application for a legitimate, rather than a discriminatory, reason is immaterial to the issue of whether or not Kotev has stated a valid claim under the Unruh Act. The Court rules that Kotev has done so.

## D. Kotev Has Stated a Claim Under Title III of the Americans With Disabilities Act

■ Kotev's third cause of action alleges that First Colony denied Kotev's application in violation of Title III of the Americans With Disabilities Act ("ADA"). Title III of the ADA, 42 U.S.C. § 12182(a), prohibits discrimination in public accommodations:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

An insurance office is considered a place of public accommodation. 42 U.S.C. § 12181(7)(F). A place of public accommodation cannot discriminate against someone who associates with a disabled person. 42 U.S.C. § 12182(b)(1)(E). A person who is HIV positive or has AIDS is considered disabled under the ADA. 28 C.F.R. § 35.104.

■ First Colony argues that Kotev's ADA claim should be dismissed because only "handicap-based discrimination that prevents physical, equal access to 'places' of 'public accommodation'" violates Title III. Mot. at 9. First Colony argues that "First Colony is not a proper defendant under the provisions

of the ADA because Kotev was not denied physical access to, or equal enjoyment of, any of its facilities by reason of any purported disability." *Id.* at 10. First Colony urges the Court to follow the decision of a Northern District of California judge who dismissed with prejudice "identical claims" in *(LaBonte v. Minnesota Mutual Life Ins. Co.,* CV 95–4170 VRW N.D.Cal.). However, the parties did not provide the Court with the *LaBonte* unpublished ruling. The Court is not bound by the decision of another district court, and the Court will not follow the *LaBonte* ruling without knowing the basis of that decision.

Few cases have addressed the issue of whether Title III prohibits more than physical impediments to the use of public accommodations by persons with disabilities. Two courts, including the First Circuit, have held that Title III prohibits more than discrimination in access to physical structures. *Carparts Distrib. Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, 19 (1st Cir.1994); *Baker v. Hartford Life Ins. Co.,* No. 94–C4416, 1995 WL 573430 at *3 (N.D.Ill. Sept. 28, 1995). The First Circuit, noting that "[n]either Title III nor its implementing regulations make any mention of physical boundaries or physical entry," *Carparts* at 20, stated that "[i]t would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not. Congress could not have intended such an absurd result." *Id.* at 19; *see also Baker,* 1995 WL 573430 at *3 (holding that Title III's reference to "place" "does not require a plaintiff to be physically present at the place of public accommodation to be entitled to non-discriminatory treatment.... [D]iscrimination can occur ... when a plaintiff ... only has contact with that place ... by telephone and correspondence."). The Court agrees with the reasoning of *Carparts* and *Baker,* and holds that the plain language of Title III covers Kotev's claim because its scope is not limited to the mere denial of physical access to places of public accommodation.

Nevertheless, the Court wishes to address this issue at length because two courts have reached a contrary conclusion. These courts have interpreted Title III "according to the ordinary, common meaning of the words in the statute" to hold that Title III only bars "discrimination in the provisions of goods, services, facilities, privileges, advantages or accommodations based on a disabled person's *physical ability* to make use of those goods, services, etc." *Parker v. Metropolitan Life Ins. Co.,* 875 F.Supp. 1321, 1327 (W.D.Tenn. 1995) (emphasis in original) (quotations omitted); *see also Pappas v. Bethesda Hosp. Ass'n,* 861 F.Supp. 616, 620 (S.D.Ohio 1994).

However, these courts have interpreted Title III more narrowly than the plain language of the statute warrants. Under their interpretation of Title III, First Colony could have discriminated against Kotev only if it had impeded or prevented his entry into a First Colony office. The plain language of Title III and the ADA demonstrates that Title III is not limited to prohibiting only the denial of physical access to persons with disabilities.

### 1. Statutory language

Title III's plain language does not refer to access to physical structures: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." 42 U.S.C. § 12182(a). Whether viewed in isolation or in the context of the rest of the ADA, this section does not bar only discrimination in access to physical structures. First Colony's narrow construction of Title III runs counter to the broadly stated purpose of the ADA: to "invoke the sweep of Congressional authority ... in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4). The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

First Colony's interpretation of Title III also would narrow the application of Title III to bar discrimination against only some of the categories of persons explicitly protected by the ADA. Under the ADA, persons with

a "disability" include persons who may not have a physical or mental impairment but who have a record of such an impairment, or who have been regarded as having such an impairment. 42 U.S.C. § 12102(2). As stated above, Title III prevents the denial of, *inter alia,* goods and services to an individual "because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). If Title III is violated only by discrimination that prevents physical access to a place of public accommodation, then many persons who do not suffer from a physical handicap but are explicitly protected by Title III could bring a Title III claim only if the public accommodation took affirmative steps to block such persons' physical access. The Court does not believe that Congress intended such an anomalous result.

Furthermore, Title III's prohibitions on discrimination extend beyond denial of physical access to a place of public accommodation. Title III includes the following specific prohibitions:

> For purposes of subsection (a) of this section, discrimination includes—
>
> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary . . . ;
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ;
>
> (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence or auxiliary aids and services . . . ;

42 U.S.C. § 12182(b)(2)(A). Only § 12182(b)(2)(A)(iv)-(v) refer specifically to physical barriers as prohibited discrimination.

Furthermore, § 501 of the ADA explicitly does not prohibit or restrict insurers "(1) from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law." 42 U.S.C. § 12201(c). This "safe harbor" section "shall not be used as a subterfuge to evade the purposes of subchapter[s] I and III of this chapter." *Id.* First Colony has not explained why insurers would need this "safe harbor" provision under Title III if insurers could never be liable under Title III for conduct such as the discriminatory denial of insurance coverage.

## 2. Legislative history and regulations

Furthermore, the ADA's legislative history and the regulations promulgated by the Department of Justice support the Court's holding that Title III encompasses the denial of insurance coverage on the basis of a disability.

The purpose of Title III of the ADA is "to bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 382. In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities. S.Rep. No. 116, 101st Cong., 2nd Sess. at 58 (1989), U.S.C.C.A.N. 267, 296.

The regulations implementing Title III also demonstrate that Title III governs the issuance of insurance policies. 28 C.F.R. § 36.212 provides a safe harbor to insurers, similar to 42 U.S.C. § 12201(c), who "underwrit[e] risks, classify[ ] risks, or administer[ ] such risks that are based on or not inconsistent with state law." The preamble to the Title III regulations emphasizes that insurance companies are public accommodations and that the practices of the insurance industry are covered by Title III. With regard to § 36.212, the preamble states:

> Language in the committee reports indicates that Congress intended to reach insurance practices by prohibiting differential treatment of individuals with disabilities in insurance offered by public

accommodations unless the differences are justified. "Under the ADA, a person with a disability cannot be denied insurance or be subject to different terms or conditions of insurance based on disability alone, if the disability does not pose increased risks." (Senate Report at 84; Education and Labor report at 136). Section 501(c)(1) of the Act was intended to emphasize that "insurers may continue to sell to and underwrite individuals applying for life, health or other insurance on an individually underwritten basis, or to service such insurance products, *so long as the standards used are based on sound actuarial data and not on speculation*" (Judiciary report at 70 (emphasis added); see also Senate report at 85; Education and Labor report at 137).

Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. Part 36, App. B at 612. The Department of Justice further notes that "life and health insurance are the areas where the regulation will have its greatest application." *Id.* at 613. This commentary is consistent with the legislative history of 42 U.S.C. § 12201(c), which states: "In sum, ADA requires that underwriting and classification of risks be based on sound actuarial principles or be related to actual or reasonably anticipated experience." H.R.Rep. No. 485, 101st Cong., 2d Sess. at 71, U.S.C.C.A.N. at 353; S.Rep. No. 116, 101st Cong., 2nd Sess. at 84–86, U.S.C.C.A.N. at 366–369. The legislative history and the regulations and comments of the Justice Department support the Court's conclusion that Kotev is entitled to bring a claim under Title III for the discriminatory denial of insurance coverage.

### 3. Safe harbor for insurers does not bar Title III claim

■ First Colony argues in its reply that it cannot be liable under Title III because the ADA explicitly does not prohibit or restrict insurance companies "from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law." 42 U.S.C. § 12201(c)(1). First Colony argues that its refusal to issue life insurance to Kotev violated no state laws.

The Court cannot rule at this point that First Colony did not violate state laws in denying Kotev's application. As stated above, the Court holds that Kotev has stated a claim for violation of California's Unruh Act. Kotev has also stated claims for violations of California's insurance law. Section 12201(c)(1) does not prevent Kotev from bringing his Title III claim. First Colony's arguments that it did not discriminate against Kotev do not warrant the dismissal of Kotev's Title III claim.

■ First Colony argues in its reply that Kotev "incorrectly interprets" the Insurance Code. However, First Colony cannot successfully challenge Kotev's Insurance Code claims by raising arguments for the first time in its reply brief. *Greenwood v. Federal Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).

### E. Kotev Has Failed to State a Claim for Intentional Infliction of Emotional Distress

■ Kotev's seventh cause of action alleges that First Colony intentionally inflicted emotional distress on Kotev. First Colony argues that Kotev cannot prove any of the elements necessary to make a prima facie case of intentional infliction of emotional distress. Those elements are: (1) outrageous conduct by defendant; (2) defendant's intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 497–98, 86 Cal.Rptr. 88, 468 P.2d 216 (1970); *Bogard v. Employers Cas. Co.*, 164 Cal.App.3d 602, 616, 210 Cal.Rptr. 578 (1985).

Kotev claims that First Colony acted outrageously in that it "failed to properly investigate Plaintiff's medical status, failed to speak with plaintiff's physician, and failed to inform itself of the risks of HIV transmission in plaintiff's situation." Complaint at ¶ 13. Outrageous conduct has been defined as conduct that is "so outrageous in character and so extreme in degree 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community.'" *Alcorn,* 2 Cal.3d at 499 n. 5, 86 Cal.Rptr. 88, 468 P.2d 216 (citing Rest.2d of Torts, § 46, cmt. d).

Although the cases cited by First Colony are not on point in that they do not address the issue of discriminatory denial of insurance coverage, Kotev has not given the Court any authority to find that the denial here rises to the level of outrageous conduct. *Accord, Reichardt v. Payne,* 396 F.Supp. 1010, 1020 (N.D.Cal.1975) (holding that the sale of a life insurance policy which discriminates against women is not outrageous conduct). The Court rules that the denial of insurance coverage does not rise to the requisite level of "outrageous conduct." Because the claim for intentional infliction of emotional distress does not sufficiently allege outrageous conduct, this claim is dismissed without prejudice.

### F. Kotev Has Failed to State a Claim for Negligent Infliction of Emotional Distress

Kotev's eighth cause of action alleges that First Colony negligently inflicted emotional distress on Kotev. First Colony argues that Kotev cannot prove that First Colony had a duty of care to Kotev. First Colony directs the Court to a case involving plaintiffs who were not the direct victims of alleged negligence. *See Soto v. Royal Globe Ins. Corp.,* 184 Cal.App.3d 420, 229 Cal.Rptr. 192 (1986). Kotev is allegedly a direct victim of First Colony's acts because he allegedly was injured as a result of First Colony's negligent denial of his application for insurance coverage.

However, Kotev has not shown that he had a preexisting special relationship with First Colony which created a duty of care. Such a relationship is necessary to bring a claim for negligent infliction of emotional distress. *Krupnick v. Hartford Accident & Indemnity Co.,* 28 Cal.App.4th 185, 206, 34 Cal.Rptr.2d 39 (1994), *citing Burgess v. Superior Court,* 2 Cal.4th 1064, 1074, 9 Cal. Rptr.2d 615, 831 P.2d 1197 (1992). Kotev claims that "Defendant had a preexisting relationship with Kotev due to Kotev's application [for] insurance in 1991." There is no authority for the Court to hold that the prior denial created a special relationship between the parties. First Colony refers the Court to cases holding that an insurer does not owe an insured a duty of good faith and fair dealing outside the scope of the contractual relationship. *Hess v. Transamerica Occidental Life Ins. Co.,* 190 Cal.App.3d 941, 235 Cal.Rptr. 715 (1987); *Gibson v. Government Employees Ins. Co.,* 162 Cal.App.3d 441, 208 Cal. Rptr. 511 (1984). Although these cases are not directly on point, they support the Court's conclusion that no duty of care arose out of the denial of the 1991 application.

Kotev argues that "Defendant also had a duty not to discriminate against Kotev due to his marital status." While it is true that First Colony had a duty to act with reasonable care, *Krupnick* explicitly held that this duty was not a sufficient basis for a negligent infliction of emotional distress claim. *Krupnick,* 28 Cal.App.4th at 206, 34 Cal.Rptr.2d 39. The complaint does not sufficiently allege that Kotev and First Colony had a preexisting relationship. Therefore, the Court dismisses Kotev's claim for negligent infliction of emotional distress without prejudice.

Kotev shall have fifteen days from the date of this order to amend the complaint.

IT IS SO ORDERED.