**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY,

Plaintiff - Appellant,

v.

LEXINGTON INSURANCE COMPANY,

Defendant - Appellee.

No. 11-17130

D.C. No. 3:10-cv-03009-RS

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted April 19, 2013
San Francisco, California

Before: SCHROEDER, SILVERMAN, and BEA, Circuit Judges.

   Plaintiff American Guarantee and Liability Insurance Company appeals

from the district court's holding on cross-motions for summary judgment that

Defendant Lexington Insurance Company did not have a duty to defend BBI

Construction in a lawsuit brought by an employee of RCM Fire Protection, David

_____

   [*]   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Trahan. We have jurisdiction under 28 U.S.C. § 1291 and now reverse and remand.

The insurance policy that Lexington Insurance issued to RCM extended coverage to additional insureds where required by written contract. The Letter of Intent between BBI and RCM satisfied this requirement. There is no genuine issue of material fact as to whether the letter was a binding contract to furnish documents evidencing general liability coverage naming BBI as an additional insured. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.").

Moreover, BBI qualified as an additional insured under the insurance policy because Trahan's injuries arose out of RCM's ongoing operations performed for BBI. RCM was subcontracted by BBI to furnish and install fire sprinklers inside the Veterans Memorial Building. David Trahan was on the job site walking towards an official exit gate when a piece of lumber fell from the roof and hit him on the head. This is sufficient to establish the requisite minimal connection between RCM's ongoing operations performed for BBI and Trahan's injury. *See Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321 (Cal. Ct. App. 1999) ("California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is

settled that this language does not import any particular standard of causation or theory of liability into an insurance policy.  Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.").

**REVERSED and REMANDED.**



American Guarantee v. Lexington Insurance Co., 11-17130

BEA, Circuit Judge, concurring in the judgment:

Although I concur in the judgment, I disagree with the majority's reasoning. The Additional Insured Endorsement on RCM's insurance policy extended insurance coverage to any entities to whom RCM promised such coverage in a "written contract." The Letter of Intent is not supported by consideration, so it cannot be the written contract required for additional insured coverage of BBI. However, the Subcontract agreement between BBI and RCM triggers coverage of BBI as an additional insured on the Lexington policy: it is a valid written contract, and it requires RCM to provide additional insured coverage to BBI. That the Subcontract was executed after Trahan's accident is immaterial under the terms of the Lexington policy.

**1.** In the Ninth Circuit, when parties refer to a document as a "letter of intent," they generally intend the document "to be a nonbinding expression in contemplation of a future contract." *Rennick v. O.P.T.I.O.N. Care*, 77 F.3d 309, 315 (9th Cir. 1996). However, "this is not to say that a letter of intent cannot be a contract. Regardless of the title, if the content shows that the parties intended to be bound, and the other requisites of a contract have been satisfied, it may be a contract. We have to study the words and context to decide." *Id*.

1

It is a basic principle of California contract law that an agreement cannot be an enforceable contract unless it is supported by consideration. *See, e.g.*, *Forgeron Inc. v. Hansen*, 149 Cal. App. 2d 352, 360-61 (1957). Consideration may be either a benefit conferred or agreed to be conferred upon the promisor or some other person, or a detriment suffered or agreed to be suffered by the promisee or some other person. Cal. Civ. Code § 1605. The Letter of Intent is bereft of consideration to promisor RCM. In the Letter of Intent, BBI requested that RCM submit documents "as soon as possible" in which RCM named BBI as an additional insured on RCM's insurance policy, but BBI made no return promise to RCM in exchange for RCM's acceptance of its obligation to provide these documents. BBI did not promise to contract with RCM if RCM submitted the requested documents.[1] BBI did not promise to negotiate exclusively with RCM if RCM complied with these requests. RCM got nothing in return for its "acceptance" of its obligation to name BBI as an additional insured. For instance, nothing in the Letter of Intent prevented BBI from "shopping" the RCM bid to other subcontractors in a search for a lower price. Because the Letter of Intent is

---

[1] There is no rule in the Ninth Circuit that the defendant *must* enter into a contract if the plaintiff performs all acts set forth in a Letter of Intent. Furthermore, there is no obligation to deal fairly or in good faith absent an existing contract. *See Hess v. Transamerica Occidental Life Ins. Co.*, 190 Cal. App. 3d 941, 945 (1987).

2

not supported by consideration, it is not a "written contract" and therefore cannot trigger coverage of BBI as an additional insured.

**2.** The Subcontract between RCM and BBI, however, is a "written contract" that required RCM to provide insurance to BBI by naming BBI as an additional insured on the Lexington policy. Lexington argues that the Subcontract cannot trigger additional insured coverage because "the policy language expressly requires the written contract to have been executed before coverage under the Additional Insured Endorsement is extended." According to Lexington, the Subcontract cannot be the basis for additional insured coverage because it was executed after the date of Trahan's injury.

This argument is premised on a misreading of the relevant documents. First, there is a "Contractual Liability" exclusion to RCM's Commercial General Liability coverage. This exclusion applies to injuries and property damage "for which the insured is obligated to pay damages *by reason of the assumption of liability in a contract or agreement*." (emphasis added). This contractual liability exclusion contains an exception for liability assumed in a contract that is an "insured contract," "provided the bodily injury or property damage occurs subsequent to the execution of the contact or agreement." The contractual assumption of liability between BBI and RCM, as outlined in the indemnity clause

3

in the Subcontract, is simply not applicable to this case: BBI's claim against RCM for contractual indemnity has been dismissed with prejudice and is not before this panel. The present case arises from American's contention that BBI is covered by the Lexington policy *as an additional insured*. The contractual liability exclusion is not relevant as to whether Lexington has a duty to defend and indemnify BBI as an additional insured.

Separate from the contractual liability exclusion, the Lexington policy has an Additional Insured Endorsement that modifies the Commercial General Liability Coverage section of the policy. The Additional Insured Endorsement includes as an "insured" "the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured." The Additional Insured Endorsement schedule names no particular entity and instead extends blanket coverage "[w]here required by written contract."

The Subcontract between RCM and BBI included an insurance requirement, which states: "Subcontractor [RCM] shall name Contractor [BBI] . . . as additional insured[] under the General Liability policy." This provision clearly satisfies the "written contract" requirement of the Lexington Additional Insured Endorsement. The more difficult question is whether the timing of the Subcontract precludes it from triggering additional insured coverage in this case. The Subcontract had a

4

"Subcontract Date" of November 2, 2006. Printed immediately below the subcontract date is the first sentence of the Subcontract: "This Agreement is made *this day* between BBI . . . and RCM" (emphasis added). The Subcontract was actually signed by RCM on November 30, 2006 and by BBI on March 6, 2007. RCM's employee was injured on the job site on November 8, 2006, which falls after the "Subcontract Date" of November 2, 2006, but before the Subcontract was executed by the signatures of both parties.[2]

That the Subcontract was executed after the employee's accident does not preclude it from extending additional insured coverage to BBI. Lexington drafted both the insurance policy and the Additional Insured Endorsement. In the contractual liability exclusion, Lexington included an exception to the exclusion for liability assumed in an "insured contract," "provided the bodily injury or property damage occurs subsequent to the execution of the contact or agreement." Lexington thus knew how to require the execution of a contract before the event to be insured for a provision to take effect; it wrote those words into the contractual liability exclusion. Lexington's Additional Insured Endorsement provides that an entity becomes an insured if such insurance is "required by written contract." In light of the difference between the language used in the contractual liability

---

[2] *See Nielsen Construction Co. v. Int'l Iron Prods.*, 18 Cal. App. 4th 863, 869 (1993) (a contract is "executed" when all parties have signed it).

5

exclusion and the Additional Insured Endorsement, there is no basis on which to extend the requirement in the exclusion to the contractual liability exception that an insured contract must be executed prior to the liability-producing event to the Additional Insured Endorsement, which requires only a "written contract."[3]

While not "executed" until March 6, 2007 (the date of the last of the two signatures), the Subcontract is dated November 2, 2006 and by its terms reflects an agreement reached that day. Parties to a contract "may retroactively adopt prior acts or fix retroactive dates of execution for a contract." *Du Frene v. Kaiser Steel Corp.*, 231 Cal. App. 2d 452, 458 (1964). *See also Grubb & Ellis Co. v. Bradley Real Estate Trust*, 909 F.2d 1050, 1054 (7th Cir. 1990) ("contractual terms may be effective for a period before a contract is executed so long as such coverage is clear from the face of the contract"). Had Lexington wanted to protect itself from the contingency wherein a written contract to extend additional insured coverage was executed after an accident, it easily could have used the same language from the exception to the contractual liability exclusion in the additional insured endorsement. Furthermore, this is not a case of retroactive insurance coverage,

---

[3] If more were needed, I could cite the principle of documentary interpretation *expressio unius*, applied by us in *Silvers v. Sony Pictures Entertainment*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc), as to the 1976 Copyright Act, but also applied generally to documents which are not statutes. *See, e.g.*, *Hardware Mut. Ins. Co. v. Dunwoody.*,194 F.2d 666, 668 (9th Cir. 1952) (applying *expressio unius* to contract interpretation).

6

since it is undisputed that *RCM* was covered by its insurance policy with Lexington at the time of Trahan's accident and that, by the terms of the Additional Insured Endorsement, BBI, as an additional insured, merely steps into the same position as an "insured" under RCM's general commercial liability policy. RCM paid whatever premiums Lexington charged for its policy (including the Additional Insured Endorsement that extended coverage "where required by written contract" and that did not incorporate the restriction used elsewhere in the policy that the contract must be executed prior to the liability-producing event), and we must give effect to the language of these documents.

I would therefore reverse and remand on the basis that the Subcontract was a written contract that gave rise to BBI's coverage as an additional insured.