Joseph M. PALLOZZI and Lori R. Pallozzi, Plaintiffs,

v.

ALLSTATE LIFE INSURANCE COMPANY, Defendant.

No. 97–CV–0236 (FJS).

United States District Court, N.D. New York.

March 24, 1998.

Disability Advocates, Inc. (Timothy A. Clune, of Counsel), Albany, NY, for Plaintiffs.

Wilson Elser Moskowitz, Edelman & Dicker (Susan Quinones, of Counsel), Albany, NY, for Defendant.

**Memorandum–Decision and Order**

SCULLIN, District Judge.

The Plaintiffs, Joseph Pallozzi and Lori Pallozzi, bring this action pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182(b)(2)(A)(i), and various provisions of state insurance law alleging that the Defendant, Allstate Life Insurance Company of New York, discriminated against them because of their mental illness by refusing to issue a joint life insurance policy. The Plaintiffs request the following relief: (1) an order directing the Defendant to issue an insurance policy; (2) an order directing the Defendant to make reasonable modifications to its policies, practices, or procedures so that disabled applicants have access to life insurance; and (3) other appropriate relief. Presently before the Court is the Defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule

12(b)(6) of the Federal Rules of Civil Procedure.

### Factual Background

The Plaintiffs have been diagnosed as suffering from major depression for which both have received counseling, medication, and inpatient treatment in the past.[1] Joseph Pallozzi additionally has agoraphobia,[2] but is not under current treatment for either ailment. Lori Pallozzi has also been diagnosed with borderline personality disorder and is currently seeing a psychiatrist twice a year and a therapist every two weeks, and is also taking the medication Zoloft.

On October 4, 1996, the Plaintiffs applied for a joint life insurance policy in the amount of $65,000 from the Defendant and were issued a Temporary Insurance Agreement the same day. On November 22, 1996, the Defendant canceled the agreement and refused to issue a policy based on the medical information provided by the Plaintiffs' psychiatrist. When the Plaintiffs asked what the basis for the rejection was, the Defendant gave the Plaintiffs a copy of their application and referred them to their psychiatrist for further information.

The Plaintiffs filed this action asserting that the Defendant's refusal to issue the joint policy was because of their disability and in violation of the public accommodations provision of the ADA. The Defendant has brought the present motion to dismiss for failure to state a cause of action on the ground that Title III of the ADA does not apply to an insurance underwriting decision not to issue a life insurance policy based on the increased risks associated with major depression, borderline personality disorder, and agoraphobia.

### Discussion

### I. Motion to Dismiss Standard

When confronted with a motion to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the factual allegations in the complaint as true and in the light most favorable to the plaintiff. *See* Fed.R.Civ.P. 12(b)(6); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### II. Title III of the ADA

Title III of the ADA proscribes discrimination by an owner or operator of a "place of public accommodation" against those individuals with a disability, that is individuals who have "a physical or mental impairment that substantially limits one or more of the major life activities...." 42 U.S.C. § 12182(a); 42 U.S.C. § 12102(2).

For the purposes of this motion, the Defendant does not dispute whether major depression, agoraphobia, and borderline personality disorder are recognized disabilities under the ADA. Furthermore, the Defendant admits that it refused to issue the requested life insurance policy based on the medical history of the Plaintiffs.

Title III enumerates various categories of a "place of public accommodation," and the federal regulations define a "place of public accommodation" as a "facility" which itself is defined as "buildings, structures, sites...." *See* 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104. Section 12182(a) states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

---

**1.** Since January 1991, Joseph Pallozzi has not been hospitalized for his agoraphobia or major depression. (Compl.¶ 16). He did receive outpatient treatment in the form of medication and counseling between August 1994 and August 1995. Lori Pallozzi has not been hospitalized for her mental illnesses since August 1989. However, she is under current medical treatment.

**2.** Agoraphobia is "[t]he abnormal fear of being helpless in an embarrassing or inescapable situation that is characterized especially by the avoidance of open public places." Merriam Webster's Collegiate Dictionary (10th ed.) 1996.

42 U.S.C. § 12182(a). Discrimination under Title III includes the failure to make reasonable modifications in the place of public accommodation's policies, practices, and procedures in an effort to afford equal opportunity for a disabled individual to enjoy its goods and services unless such modifications would fundamentally alter the nature of the goods or services. *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

The Defendant argues that Title III of the ADA is meant to address physical structures which persons would enter for the purpose of using the goods or services provided therein. While the physical structure of an "insurance office" would be covered under the Act, neither the insurance policy nor an insurance company is a "place of public accommodation" under the ADA because neither is a physical structure. *See* 42 U.S.C. § 12181(7)(F). The Defendant contends that Title III merely requires that disabled people be provided with physical access to the goods and services offered and does not purport to regulate the underwriting practices of insurance companies. Furthermore, the Defendant maintains that the "safe harbor" provision of the ADA clearly recognizes that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, reserved to the states the task of regulating the insurance industry. *See* 42 U.S.C. § 12201(c).

### A. Application of Title III to the Underwriting Practices of Insurance Companies

■ While some courts have broadened the scope of Title III of the ADA to reach nonphysical structures and have held that Title III was intended to regulate the underwriting practices of insurance companies,[3] the more persuasive interpretation is that "[t]he ADA does not, nor was it ever intended to regulate the business of insurance, and for that reason it includes an explicit 'Safe Harbor' provision shielding traditional insurance risk classification practices from regulation under the ADA." *Leonard F. v. Israel Discount Bank of New York*, 967 F.Supp. 802, 805 (S.D.N.Y.1997). Limitations upon the benefits provided to those with mental conditions as opposed to physical conditions "is supported by tradition and common sense." *Id.* at 806. This position is further supported by the Sixth Circuit's decision in its rehearing of *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir.1997), which held that "Title III regulates the availability of the goods and services the place of public accommodation offers as opposed to the contents of goods and services offered by the public accommodation." [4] *See also Pappas v. Bethesda Hosp. Ass'n*, 861 F.Supp. 616, 620 (S.D.Ohio 1994).

Furthermore, as the Defendant points out, Congress chose to include in the list of places of public accommodations an "insurance office," which is open to the public, but not an "insurance company," which is where the underwriting decisions are made.[5] Reading the statute in conjunction with the "safe harbor" provision, it is clear that Congress intended to protect the insurance industry and leave the regulation of the insurance business to the states. Indeed, the legislative history underlying the "safe harbor" provision states, "The Committee [did] not intend that any

---

**3.** *See World Ins. Co. v. Branch*, 966 F.Supp. 1203 (N.D.Ga.1997); *Cloutier v. Prudential Ins. Co. of Am.*, 964 F.Supp. 299 (N.D.Ca.1997); *Kotev v. First Colony Life Ins. Co.*, 927 F.Supp. 1316 (C.D.Ca.1996); *Baker v. Hartford Life Ins. Co.*, 1995 WL 573430 (N.D.Ill.1995); *Doukas v. Metropolitan Life Ins. Co.*, 950 F.Supp. 422 (D.N.H. 1996). These cases rely in part on dicta in *Carparts Distribution Ctr. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19–20 (1st Cir.1994), in which the First Circuit found that the protections under Title III were not limited to physical structures. However, even there the court stated it would be "unwise to go beyond" the possibility that Title III might apply to the insurance industry.

**4.** As the Sixth Circuit further explained: "The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided. In other words, a bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books. Similarly, a video store must make its facilities and rental operations accessible, but is not required to stock closed-captioned video tapes." *Parker*, 121 F.3d at 1012.

**5.** *See* 42 U.S.C. § 12181(7)(F).

provisions of this legislation should affect the way the insurance industry does business in accordance with the State laws and regulations under which it is regulated ... Since there is some uncertainty over the possible interpretations of the language contained in titles I, II, and III as it applies to insurance, the Committee added section 501(c) [42 U.S.C. § 12201(c) ] to make it clear that this legislation will not disrupt the current nature of insurance underwriting or the current regulatory structure...." A & P S.Rep. 101–116, at 84.

Therefore, this Court holds that Title III of the ADA was not intended to reach the underwriting practices of insurance companies. If, however, the "safe harbor" provision was used as a subterfuge to elude the purposes of the ADA, then an exception may arise.[6] See Parker, 121 F.3d at 1014 n. 7; Title III Technical Assistance Manual— Covering Public Accommodations and Commercial Facilities (1993) ("Insurance offices are places of public accommodation, and, as such, may not discriminate on the basis of disability in the sale of insurance contracts ... An insurer ... may underwrite, classify, or administer risks ... provided that such practices are not used to evade the purposes of the ADA.").

### B. The Denial of Coverage

■ While Title III of the ADA does not ordinarily apply to the underwriting practices of insurance companies, an individual may not be denied insurance coverage based on a disability unless such denial is based upon sound risk classification. See H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 137,

at 70, reprinted in 1990 U.S.C.C.A.N. at 420, 494 (stating that "plan may not refuse to insure ... an individual ... solely because of a physical or mental impairment, except where the refusal ... is based on sound actuarial principles ... For example, a blind person may not be denied coverage based on blindness independent of actuarial risk classification.").

■ In the instant case, the Plaintiffs have alleged they were denied the joint insurance policy because of their mental illnesses. However, they have not alleged facts from which the Court can draw a favorable inference that the denial might not have been based on sound actuarial principles or that their combined mental illnesses did not pose increased risks. Two individuals who suffer from major depression, agoraphobia, and borderline personality disorder would under traditional risk classification and common sense have a significantly higher risk classification than two individuals who do not have a disability or even individuals who have a different type of disability.[7] See Aguilar v. United States Life Ins. Co., 162 A.D.2d 209, 556 N.Y.S.2d 584, 585 (1st Dep't 1990) (recounting testimony by the chief underwriter for an insurance company that had the company been "aware of the true and accurate medical history of [the decedent], which included mild to moderate depression" the insurance policies would never, "without equivocation," been issued). Furthermore, the Plaintiffs have failed to provide factual support for their contention that the Defendant used the "safe harbor" provision as a subterfuge.[8] All of Plaintiffs' allegations which

6. The last clause of § 12201(c) prohibits insurers from using the "safe harbor" as a subterfuge to evade the purposes of the ADA. See 42 U.S.C. § 12201(c).

7. Indeed, the very nature of insurance requires discrimination, meaning that the insurers must categorize individuals according to risk. To force an insurer to issue a policy to every individual regardless of the individual's risk classification would undermine the fundamental characteristic of the insurance industry. "The discrimination against which the statute is directed is based on the practices or procedures of the public accommodation itself which may deny the handicapped equal *access* to a service which that accommodation offers." Stoutenbor-

ough, et al. v. Nat'l Football League, Inc., et al., 59 F.3d 580, 582–83 (6th Cir.1995) (emphasis added).

8. The Supreme Court has defined the term "subterfuge" as a "scheme, plan, stratagem, or artifice of evasion" or a specific intent to discriminate or evade the requirements of the particular statute. See Ohio Public Employees Retirement Sys. v. Betts, 492 U.S. 158, 167, 181, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989); see also Parker, 121 F.3d at 1014 n. 5. Because the higher risk classification based on serious mental illness existed before the enactment of the ADA, the practice cannot be characterized as a subterfuge to evade the purposes of the ADA. Id. 492 U.S. at 167.

support a claim under Title III of the ADA are mere conclusory allegations devoid of any factual basis. The Court finds that the Plaintiffs have not stated a claim upon which relief can be granted and, therefore, the Defendant's Rule 12(b)(6) motion on the ADA claim is granted. Additionally, the Court refuses to exercise its supplemental jurisdiction over the state claims.

## Conclusion

After reviewing the entire file in this matter, the submissions of the parties, and the applicable law, it is hereby

ORDERED that the Defendant's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED and the complaint is dismissed.

**IT IS SO ORDERED.**