**John DOE and Richard Smith, Plaintiffs,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Defendant.**

No. 98 C 0325.

United States District Court,
N.D. Illinois,
Eastern Division.

April 3, 1998.

Stuart Irwin Graff, Schiff, Hardin & Waite, Chicago, IL, Ann H. Fisher, AIDS Legal Council of Chicago, Chicago, IL, Heather Chase Sawyer, Lambda Legal Defense & Education Fund, Inc., Chicago, IL, for Plaintiffs.

Joel H. Kaplan, Thomas James Piskorski, Cassandra L. Curry, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants.

Scott R. Lassar, U.S. Attorney, Northern District of Illinois, Joan Laser, Assistant U.S. Attorney, Northern District of Illinois, Chicago, IL, Bill Lann Lee, Acting Assistant Attorney, General Civil Rights Division, John L. Wodatch, L. Irene Bowen, Philip L. Breen, Alyse S. Bass, Civil Rights Division, Washington, DC, for U.S. as Amicus Curiae.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

John Doe ("Doe") and Richard Smith ("Smith") ("plaintiffs") bring a two count complaint against Mutual of Omaha Insurance Company ("Mutual").[1] The claims arise from plaintiffs' purchase of individual health insurance policies from Mutual. Count I alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Count II alleges a violation of Section 364 of the Illinois Insurance Code ("IIC"), 215 ILCS 5/364. Mutual moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs filed a timely response. The Department of Justice ("DOJ") also filed a response brief for the United States as *amicus curiae*.

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir.1996). Plaintiffs are Chicago residents infected with the human immunodeficiency virus ("HIV"). Mutual is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Mutual offers and sells its insurance directly to members of the public at various office locations.

Both Doe and Smith hold Mutual health insurance policies that place significant limits on the amount of benefits available to individuals suffering from Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Conditions (ARC) ("AIDS/ARC caps"). Doe's policy limits recoverable benefits to a lifetime maximum of $100,000. Smith's policy limits recoverable benefits to a lifetime maximum of $25,000. By contrast, each policy provides benefits for other medical care up to a lifetime maximum of $1,000,000. In addition, for medical conditions other than AIDS and ARC, Mutual will reinstate the million dollar maximum benefit and pay additional claims on the policy after the limit is reached, provided the insured does not incur any expenses for two consecutive calendar years.

Plaintiffs allege a number of ways the AIDS/ARC caps impact their ability to obtain continued medical care. According to medical guidelines published by the National Institutes of Health, HIV infection is best treated through early medical intervention, including antiretroviral therapies and related care aimed at reducing the levels of HIV in the body. Because Mutual considers expenses related to any treatment or care for HIV infection as part of the insured's lifetime maximum benefit for AIDS or ARC, the benefits caps adversely affect plaintiffs' ability to obtain the recommended medical care, including the initiation and continuation of antiretroviral therapies and related treatment. In particular, the AIDS/ARC caps

---

1. In order to protect plaintiffs' privacy, the court granted leave to proceed anonymously under the fictitious names "John Doe" and "Richard Smith." *See* Order, No. 98 C 0325 (N.D.Ill. Feb.19, 1998).

place plaintiffs at substantial risk of exhausting their coverage in the near future. Once plaintiffs have reached the policy limits, they will be left without insurance benefits for all medical treatment related to AIDS or ARC. Thus, the policy caps not only impair the plaintiffs' ability to make treatment decisions, but pose the risk of jeopardizing plaintiffs' health by forcing an untimely interruption in medical treatment.

In Count I, plaintiffs allege that Mutual's policy caps on AIDS and ARC benefits violate the ADA's prohibition against discrimination on the basis of a disability because they deny plaintiffs the opportunity to participate in and benefit from the $1,000,000 lifetime maximum and potential reinstatement of benefits provided to insureds with other medical conditions. Count II alleges a violation of Section 364 of the IIC based on Mutual's inability to support its coverage distinctions with reference to sound actuarial principles and actual experience. 215 ILCS 5/364. Mutual moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## DISCUSSION

### I. Motion to Dismiss Standards

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *Travel All Over The World, Inc.*, 73 F.3d at 1429 (7th Cir.1996); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432 (7th Cir.1993) (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988)). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990).

2. For purposes of this motion, Mutual assumes asymptomatic HIV positive status constitutes a disability as defined by the ADA. Mutual notes, however, that appellate courts are divided on this issue. *Compare Runnebaum v. NationsBank of Maryland*, 123 F.3d 156 (4th Cir.1997) *with Abbott v. Bragdon*, 107 F.3d 934 (1st Cir.1997), *cert.*

### II. Scope of Title III of the ADA

This case presents a novel threshold issue of statutory interpretation under Title III of the ADA.[2] The issue is whether Title III's prohibition against unlawful discrimination extends to the content of insurance policies offered directly through an insurer. Title III's general anti-discrimination provision is found in § 302(a) of the ADA. 42 U.S.C. § 12182(a). The provision reads:

No individual shall be discriminated against based on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).[3] In Mutual's view, the plain language of this provision dictates that Title III regulates only access to goods and services offered by places of public accommodation, as opposed to the content of the goods and services themselves. According to Mutual's interpretation, since plaintiffs indisputably enjoyed equal access to the same health insurance policies available to any other individual (disabled or non-disabled) their ADA claim fails as a matter of law.

Plaintiffs offer an alternative interpretation of the plain language of § 302(a) of the ADA and of the intended scope of Title III. Plaintiffs assert that Mutual's restrictive reading of the statutory text would render meaningless § 302(a)'s requirement that persons with disabilities be accorded "full and equal enjoyment" of facilities, goods, services, privileges, or advantages of public accommodations. Limiting the reach of § 302(a) to denials of access, as Mutual suggests, misreads the text because one can only enjoy something after gaining access. Plaintiffs find additional support for this broad interpretation of Title III in the text of § 302(b). The subsection states, in relevant part:

*granted*, —— U.S. ——, 118 S.Ct. 554, 139 L.Ed.2d 396 (1997). *This issue is therefore not properly before the court.*

3. "Insurance offices" are included in Title III's list of "private entities that are considered public accommodations." 42 U.S.C. § 12181(7)(F).

**1192**

It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class ... with the opportunity to participate in or benefit from a good, service, facility, privilege or advantage, or accommodation that is not equal to that afforded to other individuals.

42 U.S.C. § 12182(b)(1)(A)(ii). In plaintiffs' view, the text of this subsection confirms that Title III of the ADA is concerned with more than just equal access. Instead, Title III of the ADA reaches the discriminatory denial of an opportunity to benefit from or enjoy equally the goods and services of a public accommodation.[4]

Mutual relies on *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir.1997) (en banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998) and *Leonard F. v. Israel Discount Bank of New York*, 967 F.Supp. 802 (S.D.N.Y.1997) as authority for its narrow interpretation of Title III's scope. In *Parker*, an *en banc* panel of the Sixth Circuit addressed whether Title III of the ADA prohibits an employer from providing a long term disability plan that distinguishes between mental and physical disorders in the amount of available benefits. The long term disability plan was challenged as discriminatory because it provided substantially lesser benefits to individuals suffering from mental disabilities, than it did to individuals suffering from physical disabilities. The Sixth Circuit held that "the provision of a long-term disability plan by an employer and administered by an employer and administered by an insurance company does not fall within the purview of Title III [of the ADA]." 121 F.3d at 1014. In arriving at this holding, the Sixth Circuit stated "[t]he applicable regulations clearly set forth that Title III regulates the availability of the goods and services the place of public accommodation offers as opposed to the contents of the goods and services offered by the public accommodation." *Id.* at 1012. Mutual argues this language supports its restrictive reading of Title III's statutory scope.

The district court in *Leonard F.* addressed a nearly identical ADA challenge to that addressed in *Parker*. Plaintiff argued that

the two year limitation for mental disorders provided by his employer's disability insurance plan was discriminatory. The first section of the court's opinion concluded that plaintiff could not state a discrimination claim against his employer under Title III of the ADA. In reaching this conclusion, the court disapproved of plaintiff's argument, in reliance on the First Circuit's decision in *Carparts Distribution Center v. Automotive Wholesaler's Ass'n of New England*, 37 F.3d 12, 17–18 (1st Cir.1994), that Title III applies to "more than mere places, in the sense of physical structures." *Id.* at 804. The district court rejected the First Circuit's ruling because "[this] decision, which is not binding precedent in this Court, is essentially dictum which flies in the face of the plain meaning of Title III and is not supported by the legislative history." *Id.* Mutual asserts the above-quoted language supports its argument that Title III does not cover the content of insurance policies.

In contrast, plaintiffs find support for their broader interpretation of the scope of Title III in *Chabner v. United of Omaha Life Ins. Co.*, 994 F.Supp. 1185 (N.D.Cal.1998) and *World Ins. Co. v. Branch*, 966 F.Supp. 1203 (N.D.Ga.1997). In *Chabner*, a plaintiff who suffered from physical disabilities sued an insurer under various state statutes and Title III of the ADA. Plaintiff alleged discrimination under the ADA because the cost of his whole life insurance policy was nearly double the rate charged to non-disabled individuals during the same period of time. At the outset of its opinion on the insurer's motion for summary judgment, the court directly addressed whether Title III applies to insurance underwriting practices. The insurer argued that the scope of Title III of the ADA covers only discrimination in the physical access to goods and services. The court rejected this argument and held that the plain language of Title III and relevant legislative history supported its application to insurance underwriting practices. 994 F.Supp. at 1188–93. Otherwise, the court reasoned, Title III's prohibitions providing for equal access to goods and services, 42 U.S.C. § 12182(b)(1)(A)(ii), and requiring "reason-

4. The DOJ shares plaintiffs' interpretation of the reach of Title III.

able modifications in policies, practices or procedures ... necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities" would be rendered superfluous, 42 U.S.C. § 12182(b)(1)(A)(ii). *Id.* at 1190.

The district court in *World Insurance Company* addressed the applicability of Title III to an insurance policy provision, like the Mutual policies at issue here, that caps lifetime coverage for AIDS treatment. 966 F.Supp. at 1207. The court first surveyed district court cases applying Title III to the content of insurance policies in related contexts. The court then examined the legislative history of the ADA. Finally, the court concluded that Title III applied to the insurer's decision to limit the maximum benefit for AIDS related treatment to $5,000. *Id.* at 1208-09.

█ This court finds the *Parker* and *Leonard F.* courts' limitation on the scope of Article III neither controlling nor persuasive. Contrary to Mutual's suggestion, limitation of Title III's scope to the question of discriminatory access is at odds with the plain language of Title III, relevant legislative history and the Department of Justice's interpretative guidance. As an initial matter, the plain language of Title III's anti-discrimination provisions nowhere indicates that Title III's scope is limited to questions of access. Indeed, in order to arrive at the restrictive interpretation of Title III that Mutual advances, the *Parker* court relied on the language of the ADA regulations. The *Parker* court did not comment on the statutory text. The plain language of 42 U.S.C. § 12182(a), (b)(1)(A)(i), (b)(1)(A)(ii) and (b)(1)(A)(iii) belies the *Parker* court's narrow conclusion. Title III is patently concerned with more than just access to the goods and services offered by places of public accommodation. Rather, the plain language of Title III manifests a Congressional intent to ensure "full and equal enjoyment" of the goods and services themselves and an equal opportunity to "participate in or benefit from" goods or services offered by a place of public accommodation. 42 U.S.C. § 12182(a), (b)(1)(A)(ii); *see Doukas v. Metropolitan Life Ins. Co.,* 950 F.Supp. 422, 426 (D.N.H.1996) ("The broad wording and diversity of [§ 12182's] 'specific prohibitions,' are a strong indication that Ti-

tle III was intended to extend beyond mere access or availability of a good or service.").

█ Applying these provisions, Mutual's insurance policy is plainly one of the "goods, services, ... privileges [or] advantages" offered by an insurance office. *See Doukas,* 950 F.Supp. at 426. It follows that, Mutual's policy caps for AIDS and ARC could plausibly constitute discrimination under any one of Title III's specific prohibitions. The AIDS/ARC caps could alternately be viewed as a discriminatory denial of the "full and equal enjoyment" of goods or a service; as a discriminatory denial of an equal opportunity to benefit from goods or a service; as the discriminatory denial of an opportunity to benefit from goods or a service; or as the provision of goods or a service different from that provided to others. § 12182(a), (b)(1)(A)(i), (b)(1)(A)(ii), (b)(1)(A)(iii). To limit the scope of Title III to denials of access would effectively render the statutory language meaningless. *See Chabner,* 994 F.Supp. at 1190. Thus, to give full effect to Title III's plain language, it must be deemed applicable to the content of insurance policies.

The legislative history of the ADA also confirms the applicability of Title III to the substance of insurance policies. In particular, the text of both House and Senate reports acknowledges the applicability of the ADA's anti-discrimination provisions to insurance policies. For example, one House report states, in pertinent part:

> [W]hile a plan which limits certain kinds of coverage based on classification of risk would be allowed under [Section 501(c)], the plan may not refuse to insure, or refuse to continue to insure, or limit the amount, extent, or kind of coverage available to an individual, or charge a different rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation, or rate differential is based on sound actuarial principles or is related to actual or reasonably anticipated experience.

H.R.Rep. No. 101-485, pt. 2, at 136-37 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 419-20. Similarly, the Senate report stated:

virtually all states prohibit unfair discrimination among persons of the same class and equal expectation of life. The [ADA] adopts this prohibition of discrimination. Under the [ADA], a person with a disability cannot be denied insurance or be subject to different terms or conditions of insurance based on disability alone, if the disability does not pose increased risks. S. Rep. No. 101–116 at 84 (1989). Thus, the legislative history illustrates that Congress contemplated application of the ADA to insurance policies.[5]

■ Finally, the DOJ's interpretative guidance provides persuasive support for the conclusion that Title III applies to the content of insurance policies. The DOJ's interpretations of Title III are expressed in both the regulations and the technical assistance manual.[6] For example, the DOJ has concluded that the ADA "reach[es] insurance practices by prohibiting differential treatment of individuals with disabilities in insurance offered by public accommodations unless the differences are justified." 28 C.F.R. ch.1, pt. 36, App. B at 619 (1996). Similarly, the DOJ's technical assistance manual states:

> Insurance offices are places of public accommodation and, as such, may not discriminate on the basis of disability in the sale of insurance contracts or in the terms or conditions of the insurance contracts they offer.

Title III Technical Assistance Manual § III–3.11000 (Nov.1993). Thus, the DOJ has consistently interpreted Title III as applicable to insurance policies.

In summary, Title III of the ADA applies to the content of Mutual's insurance policies. In reaching this conclusion, this court joins a growing number of district courts across the nation that have found Title III's scope to encompass review of the substance of insurance policies. *See, e.g., Chabner,* 994 F.Supp. at 1190; *Lewis v. Aetna Life Ins. Co.,* 982

F.Supp. 1158, 1163–65 (E.D.Va.1997); *World Insurance Co.,* 966 F.Supp. at 1207–08; *Cloutier v. Prudential Ins. Co.,* 964 F.Supp. 299, 301–02 (N.D.Cal.1997); *Doukas,* 950 F.Supp. at 425–26; *Kotev v. First Colony Life Ins. Co.,* 927 F.Supp. 1316, 1321–22 (C.D.Cal.1996); *Anderson v. Gus Mayer Boston Store of Delaware,* 924 F.Supp. 763, 779 (E.D.Tex.1996); *Baker v. Hartford Life Ins. Co.,* No. 94 C 4416, 1995 WL 573430, *3 (N.D.Ill. Sept.28, 1995). The contrary conclusion Mutual urges would undermine the plain language of Title III, and disregards legislative history as well as the compelling guidance of the DOJ.

## III. Title IV of the ADA

Mutual next points to § 501(c) of Title IV of the ADA as proof of Congress' intent to curtail the reach of Title III to insurance policies. Section 501(c) provides, in relevant part:

> Subchapters I through III of this chapter and Title IV of this Act shall not be construed to prohibit or restrict—
>
> > (1) an insurer ... from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law;
>
> ....
>
> Paragraph[ ](1) ... shall not be used as a subterfuge to evade the purposes of subchapter I and III of this chapter.

42 U.S.C. § 12201. Mutual contends § 501(c) establishes a rule of construction. According to Mutual, § 501(c) exhibits Congress' intent to prohibit any construction of Article III that would impose an affirmative obligation on insurance companies to design policies in a certain way. By contrast, plaintiffs argue the inclusion of § 501(c) only reinforces the conclusion that Title III reaches the content of insurance policies.

---

**5.** Other district courts have relied on similar sections of the ADA's legislative history to support the application of Title III to insurance policies. *See, e.g., Chabner,* at 1190; *World Insurance,* 966 F.Supp. at 1208.

**6.** Congress has delegated to the DOJ the authority to promulgate binding regulations, 42 U.S.C. § 12186(b), and to issue a technical assistance manual providing guidance about the ADA's re-

quirements, 42 U.S.C. § 12206(c)(3). In view of this express delegation of authority, the DOJ's regulations must be given "legislative and hence controlling weight, unless they are arbitrary, capricious, or clearly contrary to the statute." *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). The technical assistance manual is entitled to similar deference. *See, e.g., Innovative Health Sys. v. City of White Plains,* 117 F.3d 37, 45 n. 8 (2d Cir.1997).

■ Plaintiffs' view of § 501(c) is in line with the predominant weight of authority. Section 501(c) has been commonly construed as a form of "safe harbor" provision for insurance companies. *See, e.g., Modderno v. King,* 82 F.3d 1059, 1063–64 (D.C.Cir.1996); *Chabner,* at 1190; *Lewis,* 982 F.Supp. at 1165–1166; *World Insurance Co.,* 966 F.Supp. at 1207–08; *Kotev,* 927 F.Supp. at 1322. Under this safe harbor, the challenged underwriting practice or risk classification does not violate the ADA if it accords with "sound actuarial principles, reasonably anticipated experience, or bona fide risk classification," or does not otherwise constitute a "subterfuge to evade the purposes of the ADA." *World Insurance Co.,* 966 F.Supp. at 1208, 1209 n. 6. Rather than signaling Congress' intent to broadly exempt insurance companies from the reach of Title III of the ADA, § 501(c)'s safe harbor provision manifests the contrary intent to subject insurance companies to the full scope of the ADA's anti-discrimination prohibitions. *See Chabner,* at 1190 ("If Title III were meant only to prevent insurance companies from denying persons with disabilities equal access to the physical plants of insurance offices, there would have been no need for Congress to include the safe harbor provision dealing with underwriting practices."); *see also Kotev,* 927 F.Supp. at 1322 (insurers would not need "this 'safe harbor' provision ... if insurers could never be liable under Title III for conduct such as the discriminatory denial of insurance coverage"). Mutual may later avail itself of § 501(c)'s safe harbor by demonstrating the caps placed on AIDS and ARC in plaintiffs' policies were consistent with sound actuarial principles, reasonably anticipated experience, or bona fide risk classification. However, § 501(c) does not support Mutual's argument that Title III of the ADA does not reach the content of insurance policies.

## IV. The McCarran–Ferguson Act

■ Mutual next argues that a straightforward application of the McCarran–Ferguson Act, 15 U.S.C. § 1012 et seq., precludes application of the ADA to insurance policy content. The McCarran–Ferguson Act provides, in relevant part, that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Under McCarran–Ferguson, unless a federal statute clearly provides otherwise, it must be construed as inapplicable to the business of insurance. *See, e.g., U.S. Dept. of Treasury v. Fabe,* 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993); *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 1113, 134 L.Ed.2d 237 (1996). In essence, Mutual argues that Title III of the ADA does not satisfy this clear statement test. In particular, Mutual asserts that the only mention of insurance in Title III is the reference to "insurance office" in 42 U.S.C. § 12181(7). Mutual contends this minor reference does not exhibit the necessary intent to regulate the content of insurance policies, business or practices.

In response, plaintiffs and the DOJ argue that McCarran–Ferguson does not preclude application of Title III to the content of insurance policies. Mutual fails to demonstrate McCarran–Ferguson bars application of Title III to the content of its insurance policies for the two independent reasons pressed by plaintiffs and the DOJ. First, § 501(c) expressly provides that insurance underwriting practices shall not be used to evade the purposes of Title III. In this manner, the ADA "specifically relates to the business of insurance" for purposes of the McCarran–Ferguson Act. § 1012(b); *see. Barnett Bank,* 116 S.Ct. at 1111–1113. In arguing to the contrary, Mutual limits its clear statement inquiry to the language of Title III. The question is whether the ADA as a whole contains sufficient specific references to the insurance industry, not whether a specific title within the ADA contains such references. Taking into account both the reference to "insurance office" in Title III and the language of § 501(c) in Title IV, the ADA contains sufficiently specific indicia of an intent to apply its prohibitions to the insurance underwriting practices.

Second, Mutual has not identified any state law that an application of Title III of the ADA would "invalidate, impair, or super-

sede." § 1012(b). Indeed, as plaintiffs note, Illinois insurance law consistently forbids Mutual's alleged discriminatory practice:

> No company, in any policy of accident or health insurance issued in this State, shall make or permit any distinction or discrimination against individuals solely because of handicaps or disabilities ... in the amount of any dividends or other benefits payable thereon, *or in any other terms and conditions of the contract it makes, except where the distinction or discrimination is based on sound actuarial principles or is related to actual or reasonably anticipated experience.*

215 ILCS 5/364 (West 1997) (emphasis added). Where there is no conflict between the federal statute and state law, as in this case, the McCarran–Ferguson Act does not bar application of federal law. *See, e.g., Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1363 (6th Cir.1995), *cert. denied,* 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996); *Merchants Home Delivery Serv. Inc. v. Frank B. Hall & Co.,* 50 F.3d 1486, 1491–93 (9th Cir.), *cert. denied,* 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995); *NAACP v. American Family Mut. Ins. Co.,* 978 F.2d 287, 295–97 (7th Cir.1992). Accordingly, application of Title III of the ADA to Mutual's policies is not precluded by the McCarran–Ferguson Act.

**V. ADA Discrimination**

 Mutual argues that AIDS/ARC caps do not constitute discrimination against individuals "on the basis of a disability," 42 U.S.C. § 12182(a), because they are a permissible distinction in the level of benefits provided to one category of disability as differentiated from other categories. Mutual finds support for this argument in a trio of appellate decisions addressing challenges under the ADA and the Rehabilitation Act, 29 U.S.C. § 794, to employer health benefit plans or long term disability plans that provide inferior benefits for mental disabilities, as compared to physical disabilities. *See, e.g., EEOC v. CNA Ins. Cos.,* 96 F.3d 1039 (7th Cir.1996); *Modderno v. King,* 82 F.3d 1059 (D.C.Cir.1996); *Parker,* 121 F.3d 1006. These cases uniformly reject the notion that providing unequal benefits as between the broad categories of mental and physical disabilities constitutes cognizable discrimination.

*EEOC,* 96 F.3d at 1044; *Modderno,* 82 F.3d at 1061; *Parker,* 121 F.3d at 1015–16. In sum, Mutual urges that because its policies similarly provided different levels of benefits for different disabilities the AIDS/ARC caps are not discriminatory under the ADA.

Mutual's attempt to make plaintiffs' claim fit the rule of *EEOC, Parker,* and *Modderno* fails because these cases are inapposite. Unlike the claims in each of those cases, the ADA claim in this case focus on Mutual's singling out of individuals with a particular disability, AIDS, for inferior coverage as compared to that afforded non-disabled individuals. Indeed, the *Parker* court specifically distinguished differentiation between broad categories of individuals with different disabilities from the discrimination prohibited by the ADA—discrimination between the disabled and non-disabled. 121 F.3d at 1014. Similarly, the Seventh Circuit distinguished its decision from a case where an insurer chooses "to vary the terms of its plan depending on whether the employee was disabled." *EEOC,* 96 F.3d at 1044. The alleged discrimination at issue here is well-illustrated by plaintiffs' hypothetical example. Mutual will provide coverage of up to $1 million dollar for hospitalizations related to pneumonia for non-disabled individuals. Whereas if the pneumonia presents itself as a complication of AIDs, it is deemed an aids related condition (ARC) and subject to the AIDS/ARC cap. If, for instance, Smith had already exhausted his $25,000 dollar limit for AIDS related care, he would be denied coverage for pneumonia treatment. A non-disabled individual who had not reached the $1 million dollar cap would not be denied coverage. Further, even if that non-disabled individual had exhausted his $1 million dollar maximum, he would be entitled to a reinstatement of benefits, provided he did not incur any expenses for two consecutive calendar years. The same reinstatement benefit is not provided to disabled persons after exhaustion of the AIDS/ARC cap. This example exposes the discriminatory nature of Mutual's policies—they subject plaintiffs to altogether different terms and conditions than non-disabled individuals. In sum, plaintiffs' allegations of differential treatment on the basis of AIDS are sufficient to state a

cognizable claim of discrimination in violation of Title III of the ADA.

## VI. Section 364 of the Illinois Insurance Code

In Count II, plaintiffs seek to state a claim for violation of § 364 of the Illinois Insurance Code. 215 ILCS 5/364. As noted above (see part IV), § 364 provides:

> No company, in any policy of accident or health insurance issued in this State, shall make or permit any distinction or discrimination against individuals solely because of handicaps or disabilities ... in the amount of any dividends or other benefits payable thereon, or in any other terms and conditions of the contract it makes, except where the distinction or discrimination is based on sound actuarial principles or is related to actual or reasonably anticipated experience.

215 ILCS 5/364 (West 1997) (emphasis added). Conceding that the Illinois legislature has not seen fit to provide a private remedy for violations of this section of the IIC, plaintiffs argue that this court should find an implied right of action under the statute.

Plaintiffs argue that an implied right of action should be found under the rationale expressed in *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 59 Ill.Dec. 905, 432 N.E.2d 849, 854–855 (1982). In *Sawyer* the Illinois Supreme Court articulated the following elements useful to the determination whether there is an implied right of action under a state statute:

1. The plaintiff is a member of the class of persons for whose benefit the statute was enacted;

2. The plaintiff's injury is one which the statute was designed to prevent;

3. A private right of action is consistent with the underlying purpose of the statute; and

4. A private right of action is necessary to effectuate the purposes of the act.

*See id.* Except perhaps for the first element, none of the other *Sawyer* elements counsels in favor of finding an implied right of action. Although the IIC benefits insurance customers, its primary concern is direct regulation of the insurance industry. There is no authority for the proposition that the

underlying purpose of IIC, in particular Article XX ("Accident and Health Insurance"), was to redress discrimination by insurers. Moreover, creation of an implied private cause of action under § 364 is not necessary to effectuate the statutory purposes of the IIC because it specifies remedies for the section's violation. *See Langendorf v. Travelers State Ins. Co.,* 625 F.Supp. 1103, 1106 (N.D.Ill.1985) (no need for implied private right of action under IIC because Director of Insurance empowered to issue cease and desist orders against insurer who commits proscribed acts). For example, section 5/730 provides that "any company, or any officer or agent thereof, issuing or delivering to any person in this State any policy in wilful violation of the provision of this article shall be guilty of a petty criminal offense." 215 ILCS § 5/370(1). Further, the Director of Insurance is empowered to revoke or suspend the license of a foreign or alien company wilfully violating the article or to order payment of a monetary penalty. 215 ILCS § 5/730(2). Thus, implication of a private cause of action under § 364 is unwarranted.

In declining to recognize an implied right of action under § 364 of the IIC, the court is mindful of the fact that no Illinois court has found an implied private right of action under any provision of the Act. As courts of limited jurisdiction, federal courts are reluctant to effect dramatic expansions of state law absent indication from the state supreme court, or at the very least a clear line of state appellate court authority. *See DeMent v. Abbott Capital Corp.,* 589 F.Supp. 1378, 1387 (N.D.Ill.1984) (refusing to imply private cause of action under the Illinois Securities Act where no Illinois court had ever held that an individual could pursue private remedies under the Act). Accordingly, plaintiffs' claim pursuant to § 364 of the IIC must be dismissed.

## CONCLUSION

Plaintiffs adequately state a claim that the AIDS/ARC caps in Mutual's insurance policies constitute discrimination in violation of Title III of the ADA. In contrast, plaintiffs fail to state a claim under the IIC because this court finds no implied private right of

action. Accordingly, the motion to dismiss is granted in part and denied in part. Count II of the complaint is dismissed with prejudice. Defendant's motion is denied in all other respects.